IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CRYSTAL NEWSOM, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-499-P |
| § | |
| COMMISSIONER, SOCIAL § | |
| SECURITY ADMINISTRATION § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

Plaintiff Crystal Newsom ("Newsom") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").[1]  Newsom protectively filed her application in October 2019, alleging that her disability began on June 15, 2012. (Transcript ("Tr.") 12.) After her application were denied initially and on reconsideration, Newsom requested a hearing before an administrative law judge ("ALJ"). (Tr. 12.) The ALJ held a hearing on June 29, 2021, and issued a decision on September 22, 2021, denying Newsom's

---

[1] Although Newsom originally sought Supplemental Security Income and DIB, her brief only contests the ALJ's ruling regarding DIB. (Plaintiff's Brief ("Pl.'s Br.") at 1; Transcript ("Tr.") at 12.)

1

application for benefits. (Tr. 12–27.) On April 6, 2022, the Appeals Council denied Newsom's request for review, leaving the ALJ's September 22, 2021 decision as the final decision of the Commissioner. (Tr. 1–6.) Newsom subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* In addition, numerous regulatory provisions govern disability insurance. *See* 20 C.F.R. Pt. 404. Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[2] Fourth, if disability cannot be found based

---

[2] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. § 404.1520(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the

3

Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Newsom v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUE

Newsom's sole issue is whether the ALJ's denial of her claim for DIB is supported by substantial evidence. (Pl's Br. at 1.)

### IV.   ALJ DECISION

In her September 22, 2021 decision, the ALJ found that Newsom had not engaged in any substantial gainful activity since June 15, 2012, her alleged onset date of disability, and that she met the disability insured status requirements of the SSA through June 30, 2018. (Tr. 14–15.) At Step Two, the ALJ found that Newsom suffered from the following "severe" impairments: degenerative disc disease of the lumbar and cervical spine and obesity. (Tr. 15–19 (emphasis omitted).) At Step Three, the ALJ found that Newsom did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 19.)

As to Newsom's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). That is, the claimant can lift, carry, push, and/or pull up to 20 pounds occasionally and up to 10 pounds frequently. She can stand and/or walk for up to 6 hours and sit for up to 6 hours in an 8-hour workday. However, the claimant can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can frequently stoop and crouch.

(Tr. 20 (emphasis omitted).) Based upon this RFC assessment, the ALJ concluded that Newsom could perform her past relevant work as a hairstylist. (Tr. 25–27.) Consequently, the ALJ found that Newsom was not disabled. (Tr. 27.)

## V.   DISCUSSION

### A. Newsom's Argument

As to her only issue, Newsom argues that substantial evidence does not support the ALJ's RFC determination because the ALJ did not properly consider Newsom's mental and physical impairments. (Pl. 's Br. at 7.) In support of her claim, Newsom argues: (1) the ALJ's decision lacked medical opinions, proper findings, or limitations related to cognitive or behavioral health deficits that are acknowledged by the ALJ in other parts of the decision; (2) Newsom was prejudiced because the ALJ did not properly consider her recent testing and imaging; (3) the ALJ failed to use evidence from Newsom's Social Security Disability Insurance claim to evaluate her SSI claim; (4) the ALJ's determination is in direct conflict with the ALJ's analysis; (5) the ALJ offered her own opinion regarding what medical findings represented; and (6) it is unclear to what factors the ALJ used to make the RFC determination. (Pl. 's Br. at 7–15 (citations omitted).)

### B. RFC Assessment Standard

RFC is what an individual can still do despite her limitations.[3] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment,

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.* The ALJ evaluated the relevant periods for Newsom's SSI and DIB claims and found that the evidence did not support Newsom's disability claim during either relevant period. (Tr. 12-27). Thus, evidence from one period of non-disability does not support a finding of disability during a different time period.

with both exertional and non-exertional[4] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial

---

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The Court notes that federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1). For most mental impairment Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings.[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[6] 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

---

[5] "Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3) . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.

[6] These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* §404.1522)." 20 C.F.R. § 404.1520a(d)(1).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3).

## C. RFC Determination

In this case, the ALJ found, as stated above, that Newsom had no severe mental impairments but had severe physical impairments, namely degenerative disc disease of the lumbar and cervical spine and obesity (Tr. 15.) Furthermore, the ALJ determined that Newsom had the RFC to perform light work except that she: (1) could lift, carry, push, and/or pull up to 20 pounds occasionally and up to 10 pounds frequently; (2) could stand and/or walk for up to 6 hours and sit for up to 6 hours in an 8-hour workday; (3) could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; and (4) could frequently stoop and crouch. (Tr. 19–20.) In making the RFC determination, the ALJ thoroughly considered Newsom's symptoms, the opinions of State Agency Medical Consultants ("SAMCs"), and other medical evidence. (Tr. 21–24.). The Court will consider Newsom's arguments regarding both the ALJ's physical and mental RFC determinations.

### 1. Physical RFC

Newsom first argues that the ALJ erred by relying on her own interpretation of the record instead of a medical opinion to make the RFC determination. (Pl.'s Br. at 10–11.) In *Ripley v. Chater*, the Fifth Circuit Court of Appeals held an ALJ erred when finding that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that

conclusion. 67 F.3d 552 at 557. The Fifth Circuit, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[7] but not clearly establishing the effect that condition had on Chater's ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557–58. The Fifth Circuit rejected the argument that the evidence substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). Additionally, the ALJ has discretion when weighing evidence in the record. *Chambliss v. Massanari,* 269 F.3d 520, 523 n.1 (5th Cir. 2001) (per curiam). There are, in this case, multiple medical opinions that weigh on the effects of Newsom's physical impairments on her ability to work, including an RFC determination by an SAMC opining that Newsom could lift and/or carry up to twenty pounds occasionally and ten pounds frequently and sit, stand and/or walk about 6 hours in an 8-hour workday. (Tr. 105, 127.) The ALJ, in making her RFC determination, dedicated almost three pages to considering and analyzing the medical and other evidence in the record relating to how Newsom's severe physical impairments affected her RFC. (Tr. 21–24.) The ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions in the record, but also the other medical evidence in the record, including SAMC findings, Newsom's own testimony, medical testing and imaging,

---

[7] "The evidence that was available for review by the ALJ shows a four-year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Id.*

and other medical evidence to determine Newsom's RFC. *Id.* The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Id.; see, e.g., Muse,* 925 F.2d at 790. Therefore, the ALJ did not commit a reversible error regarding this issue.

### 2. Mental RFC

Newsom also claims that the ALJ failed to adequately incorporate limitations in cognitive or behavioral health that the ALJ found earlier in the RFC determination.[8] (Pl. 's Br. at 7.) The Court notes that, as set forth above, the responsibility for determining the RFC falls to the ALJ. *Ripley,* 67 F.3d at 557. The paragraph B criteria limitation in the first functional area that the ALJ found following the "special technique" is not an RFC assessment. SSR 96–8p, 1996 WL 374184, at *4. Instead, it is used to rate the severity of Newsom's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments . . ." *Id.* Moreover, "[w]hile the regulations require the ALJ to evaluate[ ] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the

---

[8] During step three of the sequential evaluation process, the ALJ applied the "special technique" and determined that Newsom had mild limitation in concentrating, persisting, or maintaining pace. (Tr. 17.) However, the ALJ determined that Newsom's mental impairments were not severe because the evidence did not indicate that Newsom faced more than a minimal limitation in her ability to do basic work activities despite mild mental limitation. (Tr. 18.) The ALJ based this determination on "the claimant's allegations, her subjective reports to treatment providers, and mental status examinations throughout the relevant period." (Tr. 17.)

mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08–CV–109–C, 2009 WL 3110205, at *5 (N.D. Tex. Sept.29, 2009).

Additionally, an ALJ does not commit legal error by declining to include mental limitations in analyzing a claimant's RFC "so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Martha L. v. Saul*, No. 1-20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021). The ALJ, in this case, considered the effects of Newsom's non-severe mental impairments on her capacity to, *inter alia*, maintain hygiene, speak normally, have judgment and insight, and make decisions, (Tr. at 18.) For example, in her decision, the ALJ described why Newsom's mental impairments did not factor into the RFC determination, explaining "the record shows little increase in symptoms or objective findings pertaining to the claimant's medical impairments, and the claimant only recently sought specialized mental health treatment despite the distant alleged onset date." (Tr. 24 (citation omitted)).

Moreover, the ALJ "exercised his responsibility as factfinder in weighing the evidence and choosing to incorporate limitations into the RFC" by considering reports from the claimant's treating physicians and the VE. *See Perez v. Kijakazi*, No. 4:21-CV-594-P, 2022 WL 4349559 at *10 (N.D. Tex. May 2, 2022), *rep. and rec. adopted*, 2022 WL 4349552 (N.D. Tex. Sept. 19, 2022). In addition, Newsom "fail[s] to point to any medical evidence showing how his alleged impairments . . . precluded him from engaging in any substantial gainful activity." *Watts v. Saul*, No. 4:19-CV-00713-Y, 2021 WL 742888 at *12, (N.D. Tex. Jan. 11, 2021), *rep. and rec. adopted*, 2021 WL 734415 (N.D. Tex. Feb. 25, 2021). Consequently, the ALJ did not err.[9]

---

[9] Newsom makes the additional argument that the ALJ erred by not considering the timing of Newsom's concurrent DIB and SSI claims, in addition to how the record evidence affected each claim. (Pl.'s Br. at 12–16.)

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 31, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed

---

However, the ALJ decision considered the medical record evidence as it related to both claims. (Tr. 12–27.) For example, at each of the five steps, the ALJ cites relevant parts of 20 C.F.R. Parts 404 and 416 (Tr. 15, 19–20, 25, 27.) The ALJ also noted the concurrent DIB and SSI claims at the beginning of the decision and made separate rulings as to each claim at the end. (Tr. 12, 27). It is also important to note that DIB and SSI claims are governed by the same legal and regulatory standards. *See Greenspan*, 38 F.3d 232, 236 (5th Cir. 1994).

and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED August 17, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE